

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black cell phone with the Disney cartoon character<br>"Stitch" on the back Seizure No. 2021250600023801<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>)    Case No.    20MJ5372 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Flood, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: \_\_\_\_\_December 14, 2020\_\_\_\_\_

_____
*Judge's signature*

City and state: \_\_\_San Diego, California\_\_\_

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> a black cell phone with the Disney cartoon character "Stitch" on the back
> Seized as FP&F No. 2021250600023801
> ("Target Device")

 

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 921201.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 11, 2020, up to and including December 12, 2020:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and heroin, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> a black cell phone with the Disney cartoon character "Stitch" on the back Seized as FP&F No. 2021250600023801
> ("Target Device")



The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 921201.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 11, 2020, up to and including December 12, 2020:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and heroin, or some other federally controlled substance, from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Andrew Flood, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> a black cell phone with the Disney cartoon character "Stitch" on the back
>
> Seized as FP&F No. 2021250600023801
>
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Maria Margarita ENRIQUEZ ("Defendant") for importing approximately 6.2 kilograms (13.64 pounds) of heroin and 375.5 grams of fentanyl from Mexico into the United States. The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

**BACKGROUND**

3.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 1996. Prior to the creation of HSI, I was a Special Agent with U.S. Immigration and Customs Enforcement (ICE) and the U.S. Immigration & Naturalization Service (INS). I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. Prior to becoming a Special Agent, I was employed as a U.S Border Patrol Agent and a San Diego County Sheriff's Corrections

1    Deputy.

2         4.      During my tenure with HSI, I have participated in the investigation of various

3    narcotics trafficking organizations involved in the importation and distribution of

4    controlled substances into and through the Southern District of California.  Through my

5    training, experience, and conversations with other law enforcement officers experienced in

6    narcotics trafficking investigations, I have gained a working knowledge of the operational

7    habits of narcotics traffickers, in particular those who attempt to import narcotics into the

8    United States from Mexico at Ports of Entry.

9         5.      I am aware that it is common practice for narcotics traffickers to work in

10   concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is

11   to smuggle controlled substances into the United States from Mexico by concealing the

12   controlled substances in vehicles that enter the United States at Ports of Entry such as the

13   San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation

14   of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently

15   communicate with the individual ("the driver") responsible for driving the vehicle

16   containing the concealed narcotics into the United States.  These communications can

17   occur before, during and after the narcotics are imported into the United States.  For

18   example, prior to the importation, narcotics traffickers frequently communicate with the

19   driver regarding arrangements and preparation for the narcotics importation.   When the

20   importation is underway, narcotics traffickers frequently communicate with the driver to

21   remotely monitor the progress of the narcotics, provide instructions to the driver and warn

22   accomplices about law enforcement activity.  When the narcotics have been imported into

23   the United States, narcotics traffickers may communicate with the driver to provide further

24   instructions regarding the transportation of the narcotics to a destination within the United

25   States.

26        6.      Based upon my training, experience, and consultations with law enforcement

27   officers experienced in narcotics trafficking investigations, and all the facts and opinions

28   set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))

can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.   On December 11, 2020, at approximately 9:58 a.m., Maria Margarita ENRIQUEZ, ("ENRIQUEZ"), a Mexican citizen Permanent Resident, applied for entry into the United States from Mexico through the Otay Mess Port of Entry in

3

vehicle lane #4. ENRIQUEZ was the driver and sole occupant of a 2000 Toyota Rav 4 ("the vehicle") bearing California license plates.

8.     A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the engine area of the vehicle.

9.     A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from ENRIQUEZ. ENRIQUEZ stated she was crossing the border to go to La Puente, California.

10.     Further inspection of the vehicle resulted in the discovery of 10 packages concealed in a non-factory compartment in the oil pan. Three of the packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 375.5 grams, and seven of the packages contained a substance, a sample of which field tested positive for the characteristics of heroin, with a total weight of 6.2 kilograms (13.64 lbs.).

11.     ENRIQUEZ was placed under arrest at approximately 11:00 am.

12.     During a post-Miranda interview, ENRIQUEZ admitted that she was going to be paid $1,000 USD to take the vehicle from Mexico into the United States. ENRIQUEZ stated she did not know what was in the vehicle but suspected it was possibly drugs. ENRIQUEZ claimed to be driving the vehicle to or near a location in Los Angeles County.

13.     ENRIQUEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.  ENRIQUEZ is scheduled to be booked into the Western Region Detention Facility.

14.     The Target Device was in the vehicle at the time Defendant was encountered by CBP on December 11, 2020. Special Agent Flood retrieved the Target Device from Defendant's personal property. Defendant admitted the Target Device belongs to her and provided Special Agent Flood with the passcode.

15.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the

facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on November 11, 2020, up to and including December 12, 2020.

## METHODOLOGY

16.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the

5

device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.     Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

19.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

///

///

///

///

///

///

///

///

1

## CONCLUSION

2    20.    Based on the facts and information set forth above, I submit there is probable

3 cause to believe that a search of the Target Device will yield evidence of Defendant's

4 violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I

5 request that the Court issue a warrant authorizing law enforcement to search the item

6 described in Attachment A and seize the items listed in Attachment B using the above-

7 described methodology.

8

9 I swear the foregoing is true and correct to the best of my knowledge and belief.

10

11

12                                    Special Agent Andrew Flood
                                      Homeland Security Investigations
13

14 Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1

15 by telephone on this 14th day of December, 2020.

16

17

18 Honorable Karen S. Crawford
   United States Magistrate Judge
19

20

21

22

23

24

25

26

27

28